CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

May 08, 2024

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JAMES TIEDEMAN, | ) |
| Plaintiff, | ) Case No. 5:23-mc-011 |
| v. | ) By: Michael F. Urbanski |
| EYEONE P.L.C., | ) Chief United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter comes before the court on a Petition to Compel Arbitration, ECF No. 1, filed by plaintiff James Tiedeman, and a Motion to Dismiss, ECF No. 5, filed by defendant EyeOne P.L.C. ("EyeOne"). Tiedeman, an ophthalmologist formerly employed by EyeOne, asks this court to compel arbitration of several claims of age and disability discrimination, arguing that the claims fall within the arbitration clause of his written Employment Agreement with EyeOne. Pet., ECF No. 1, ¶¶ 21, 26; Employment Agreement, ECF No. 1-1. EyeOne asks this court to dismiss the Petition because the claims fall outside the scope of the arbitration agreement. The court will **GRANT** EyeOne's Motion to Dismiss because Tiedeman's statutory discrimination claims do not bear a significant relationship to the terms of the Employment Agreement, thereby falling outside the scope of the arbitration provision.

I.

EyeOne employed Tiedeman as an ophthalmologist from 2008 until 2023, when the company discharged him. Pet., ECF No. 1, ¶ 5. On September 28, 2007, Tiedeman and EyeOne's predecessor-in-interest entered into an Employment Agreement, which remained

1

operative throughout Tiedeman's employment.[1] See id. ¶ 6; Employment Agreement, ECF No. 1-1. The Agreement provided for an initial three-year term of employment beginning January 1, 2008, automatically renewing for one-year terms thereafter. Pet., ECF No. 1, ¶ 8.

The ten-page Employment Agreement sets out conditions of Tiedeman's employment including compensation, minimum qualifications, leave, expected services, company policies, expenses, termination, and non-competition. Employment Agreement, ECF No. 1-1. Nowhere in the Agreement do the parties address discrimination. The termination, non-compete, and arbitration provisions are relevant to this dispute. Over three pages, the Employment Agreement identifies conditions that justify immediate termination by EyeOne, termination for cause by EyeOne, and at-will termination by either party. Id. ¶ 10. For example, EyeOne could have terminated Tiedeman at any time and without notice if he became "permanently disabled or incapacitated . . . for a continuous period of (90) days." Id. ¶ 10(a)(3). Additionally, EyeOne could have discharged Tiedeman upon ten days' written notice if he "fail[ed] to fulfill any of the duties and responsibilities assigned to him by [EyeOne]." Id. ¶ 10(b)(2). Finally, the Agreement notes that "[e]ither party may terminate this Agreement . . . without cause by providing thirty (30) days written notice to the other party." Id. ¶ 10(c).

The Agreement also includes a non-compete provision. See Id. ¶ 11. In this section, Tiedeman agreed not to engage professionally with "any person or entity carrying on any business that is competitive with or adverse to [EyeOne]" during and for two years following

---

[1] Tiedeman alleges that EyeOne assumed the "rights and obligations under the Agreement upon succeeding [its predecessor]." Pet., ECF No. 1-1, at 2 n.1.

2

his employment with EyeOne. Id. ¶ 11(a)–(b). Notably, the non-compete provision also states that "[t]he existence of any claim or cause of action of [Tiedeman] against [EyeOne], whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by [EyeOne] of this covenant." Id. ¶ 11(d).

The Employment Agreement contains the following arbitration clause:

> ARBITRATION: Any controversy or claim arising out of or related to this Agreement, or breach thereof, shall be settled by arbitration in Augusta County, Virginia, in accordance with the rules of the American Arbitration Association, and the parties agree that the arbitrator may impose sanctions in this discretion to enforce discovery, and any award rendered therein shall be final and binding upon each and all of the parties, and their successors-in-interest, and judgment thereon my [sic] be entered in any [c]ourt having jurisdiction thereof. The cost of such proceedings shall be paid by the party initiating the arbitration, unless such party is declared by said arbitrator to be substantially successful in securing the award of determination selected by him in said proceeding, in which event the cost shall be paid by the unsuccessful party or parties. The arbitrators shall award reasonable attorneys' fees to the prevailing party.

Id. ¶ 12.

In May 2022, Tiedeman, then 77 years old, was diagnosed with a spinal condition that required him to take several weeks of medically approved leave for treatment. Id. ¶ 12. After concluding his treatment, Tiedeman informed EyeOne that he had been cleared to return to work "with no restrictions on his surgical or clinical duties," id. ¶ 13, however EyeOne "refused to allow Dr. Tiedeman to return to work full time and instead transitioned most of his patients and clinical duties to a significantly younger ophthalmologist that it hired while Dr. Tiedeman was on leave," id. ¶ 14. Over the next several months, EyeOne repeatedly denied Tiedeman's requests to return to full time work, and the company's "leadership openly

3

and persistently pressured Dr. Tiedeman to retire." Id. ¶ 16. Tiedeman repeatedly refused to retire, and the company reduced his pay commensurate with his part-time schedule. Id. ¶ 15.

On May 19, 2023, the partners of EyeOne asked Tiedeman "to complete cognitive testing at a facility selected by EyeOne in California." Id. ¶ 17. Tiedeman refused because "EyeOne had no grounds to compel [him] to undergo cognitive testing, nor had EyeOne asked any of its younger physicians to complete similar testing." Id. ¶ 18. EyeOne subsequently discharged Tiedeman on May 22, 2023. Id. ¶ 19.

Through counsel, Tiedeman then wrote a letter to EyeOne demanding that the company consent to arbitrate several claims for age- and disability-based discrimination. Id. ¶ 20–22. Specifically, Tiedeman informed EyeOne that he intended to pursue the following claims for relief:

> 1. Age discrimination and retaliation[2] pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634;
>
> 2. Age discrimination, disability discrimination, failure to accommodate, and retaliation pursuant to the Virginia Human Rights Act ("VHRA"), Va. Code Ann. §§ 2.2-3900–2.2-3909;
>
> 3. Disability discrimination, failure to accommodate, and conducting illegal medical inquiries or demands pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; and
>
> 4. Interfering with rights and retaliation pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611–2654.

---

[2] The Petition states that Tiedeman intended to bring claims for "[r]etaliation under the ADA, ADA, VHRA, and FMLA." Pet., ECF No. 1, ¶ 21. It appears that Tiedeman meant to reference the ADEA and ADA instead of ADA and ADA.

4

Pet., ECF No. 1, ¶ 21. On August 25, 2023, EyeOne informed Tiedeman that it would not consent to arbitration. Id. ¶ 23. Tiedeman filed this Petition on September 5, 2023, and EyeOne filed its Motion to Dismiss on October 4, 2023. The court held a hearing on the Petition and Motion on April 30, 2024.

## II.

The court need only decide EyeOne's Motion to Dismiss to resolve this case. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a petition to compel arbitration. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, the petition "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the petition "has alleged—but it has not 'shown'—that the pleader is entitled to relief." Id. at 679; see also Simmons v. United Mortg. & Loan Inv., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (quotation and emphasis omitted).

In the face of a motion to dismiss, the court must consider all well-pleaded allegations in a petition to compel arbitration as true and construe them in the light most favorable to the plaintiff. Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017). Nevertheless, a court is not required to accept as true "a legal conclusion couched as a factual

allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986); conclusory allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979); or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). "Thus, 'in reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), a court must determine whether it is plausible that the factual allegations'" in the petition "are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

Although courts are "generally confined to the facts alleged in the . . . petition for the purposes of considering a motion to dismiss pursuant to [Rule] 12(b)(6)," the court may "consider documents attached to the [petition]." Int'l Eng'g & Constr. S.A. v. Baker Hughes, 399 F. Supp. 3d 194, 198–99 (S.D.N.Y. 2019) (brackets in original) (quoting G.distributors, LLC v. Scanlon, No. 18 Civ. 2101, 2018 WL 6329444, at *3 (S.D.N.Y. Dec. 3, 2018))). Accordingly, the court will consider the Employment Agreement in resolving EyeOne's Motion.

## III.

EyeOne argues that Tiedeman's statutory age and disability discrimination claims fall outside the scope of the arbitration provision of the Employment Agreement.[3] The FAA "provides that any 'written provision' in a contract requiring the parties thereto 'to settle by

---

[3] EyeOne initially also argued that Tiedeman had not exhausted his administrative remedies, however Tiedeman submitted right-to-sue letters from the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights ("VOCR"), and EyeOne subsequently dropped its exhaustion argument. See Def.'s Resp. to Pl.'s Sur-Reply, ECF No. 14, at 1.

arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable.'" Amos v. Amazon Logistics, Inc., 74 F.4th 591, 595 (4th Cir. 2023) (quoting 9 U.S.C. § 2). "Arbitration is a matter of contract," and the FAA "requires courts to enforce [arbitration agreements] according to their terms." Mey v. DIRECTV, LLC, 971 F.3d 284, 288 (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).

To compel arbitration, a litigant must "establish that (1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." Id. (citing Adkins v. Lab. Ready, Inc., 303 F.3d 496, 500–01 (4th Cir. 2002)). EyeOne contests only the second element, that Tiedeman's claims fall within the scope of the arbitration clause of the Employment Agreement. See Brown v. Trans World Airlines, 127 F.3d 337, 340 (4th Cir. 1997) ("The determination of the arbitration provision's scope and meaning is for the court to resolve." (citing AT&T Techs., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 649 (1986))).

The issue here is "whether this dispute falls within the scope of the arbitration clause." Dome Tech., LLC v. Golden Sands Gen. Contractors, Inc., 257 F. Supp. 3d 735, 744 (W.D. Va. 2017). "At this step of the analysis, the federal policy favoring arbitration comes into play." Id.; but see Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) ("A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,

363 U.S. 574, 582 (1960)). Statutory claims, such as Tiedeman's claims under the ADEA, VHRA, ADA, and FMLA, "may be made the subject of an enforceable arbitration by agreement." Brown v. Trans World Airlines, 127 F.3d 337, 340 (4th Cir. 1997); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991) (holding that nothing in the ADEA indicates a congressional intent to preclude the arbitration of ADEA claims).

> In view of the FAA's "federal policy favoring arbitration, . . . as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 . . . (1983). "The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'" Levin v. Alms [&] Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011) (quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989)). Thus, [the court] must resolve a dispute about the scope of an arbitration agreement in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Am. Recovery Corp., 96 F.3d at 92 (quoting [United Steelworkers of Am. v.] Warrior & Gulf Navigation Co., 363 U.S. [574, 582–83 (1960)]).

Mey, 971 F.3d at 292. The Fourth Circuit has "time and again emphasized that [courts] must interpret and enforce the words of the particular arbitration provision to which the parties agreed." Id. at 293 (first citing Am. Recovery Corp., 96 F.3d at 92–93; and then citing Cara's Notions, Inc. v. Hallmark Cards, Inc., 140 F.3d 566, 569, 571 (4th Cir. 1998)). Accordingly, the court turns to the text of the provision to determine whether it "is 'susceptible of an interpretation that covers'" Tiedeman's claims against EyeOne under the ADEA, VHRA, ADA, and FMLA. Id. (quoting Am. Recovery Corp., 96 F.3d at 92).

8

The provision states that "[a]ny controversy or claim arising out of or related to this Agreement, or breach thereof, shall be settled by arbitration." Employment Agreement, ECF No. 1-1, ¶ 12. The Fourth Circuit has characterized arbitration provisions containing the words "arising out of or related to" as "broad arbitration clauses capable of an expansive reach." Mey, 971 F.3d at 292 (quoting Am. Recovery Corp., 96 F.3d at 93); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (describing as "broad" an arbitration clause that required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or breach thereof"). Arbitration provisions that use this broad language "cover 'disputes that do not arise under the governing contract when a significant relationship exists between the asserted claims and the contract,' regardless of the label attached to the dispute." Mey, 971 F.3d at 292 (quoting Long v. Silver, 248 F.3d 309, 313 (4th Cir. 2001)). "Thus, 'the test for an arbitration clause of this breadth is . . . whether a significant relationship exists between the claim and the agreement containing the arbitration clause.'" Dome Tech., LLC, 257 F. Supp. 3d at 745 (quoting Am. Recovery Corp., 96 F.3d at 94).

The Agreement is wide-reaching—it contains provisions that address compensation, minimum qualifications, leave, expected services, company policies, expenses, termination, and non-competition. Employment Agreement, ECF No. 1-1. However, the Agreement does not cover all aspects of the employment relationship. Indeed, nowhere in the Agreement do the parties address discrimination. EyeOne seizes on this omission, arguing that Tiedeman's statutory claims are not subject to mandatory arbitration because the Employment Agreement "is silent as to discrimination and contains no language to suggest that the parties intended to

submit statutory disputes to arbitration." Def.'s Mem. Supp. Mot. to Dismiss, ECF No. 6, at 9.

In Brown v. Trans World Airlines, the Fourth Circuit determined that statutory claims for sexual harassment, discrimination, and retaliation did not fall within the scope of the arbitration provision of a collective bargaining agreement.[4] 127 F.3d at 341. The court noted that the provision at issue subjected only "disputes that 'grow out of the interpretation or application of any of the terms of this agreement'" to arbitration. Id. at 341–42 (emphasis in original). Even though the employment agreement contained a separate provision "prohibit[ing] conduct similar to that prohibited by Title VII [of the Civil Rights Act of 1964] and by the [FMLA]," the court reasoned that "none of the substantive provisions in the agreement reaches beyond the agreement to cover disputes arising under these [anti-discrimination] laws." Id. at 342. Accordingly, the court found that the employee's statutory claims were not subject to mandatory arbitration. Id.

In Norman v. Call-A-Nurse, LLC, the court found that a former employee's ADEA claim was not covered by an arbitration clause that pertained to "claims arising out of or related to this [individually negotiated employment agreement]." No. 1:16-cv-1388, 2017 WL 10844694, at *4 (M.D.N.C. Aug. 11, 2017). The court discussed the Fourth Circuit's decision in Brown, observing that "the Fourth Circuit appears to view such provisions as different

---

[4] The facts of Brown are not on all fours with those in this case because Brown concerned a collective bargaining agreement, not an individually negotiated employment contract. This factual difference is relevant because, in the context of a collective bargaining agreement, courts do not apply a presumption in favor of arbitration as to statutory discrimination claims. See E. Associated Coal Corp. v. Massey, 373 F.3d 530, 533 (4th Cir. 2004) ("While a presumption in favor of arbitration normally governs the interpretation of arbitration clauses in CBAs, this presumption is inapplicable in the context of statutory discrimination claims." (citing Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 77–79 (1998))).

10

from, and narrower than, those [that pertain to claims] arising out of the employment relationship and certainly does not interpret such provisions as encompassing all aspects of the employment relationship." Id. The court reviewed the terms of the employment agreement, finding that it:

> [O]utline[d] in a detailed bullet point fashion what constitutes grounds for termination under the [a]greement which does not include discriminatory conduct by either party; the [a]greement is completely silent as to any rights or responsibilities associated with discriminatory conduct of any kind; and the [a]greement contains language that explicitly contemplates that [the former employee] has rights and remedies related to her employment outside of the parties' [a]greement.

Id. at *5. The court concluded that the employment agreement was "clear and unambiguous" that the former employee's statutory claims were not covered by the arbitration provision. Id.

In other cases, courts reviewing similar arbitration clauses have found that statutory discrimination claims are subject to arbitration. In Egas Valencia v. Logan General Hospital, LLC, the court determined that a former employee's statutory claim for constructive discharge was subject to arbitration pursuant to an employment agreement that mandated arbitration of "any controversy or claim arising out of or related to this [a]greement, or any breach thereof." No. 2:16-cv-6597, 2016 WL 6518626, at *3 (S.D.W. Va. Nov. 1, 2016). Referencing Fourth Circuit and Supreme Court precedent confirming the breadth of these kinds of arbitration clauses, the court reasoned that claims concerning the employee's termination were covered by the arbitration clause because the employment agreement included provisions for length of employment, compensation, leave, benefits, and methods for termination. Id. at *3–4 (first citing Prima Paint Corp., 388 U.S. at 398; then citing Am. Recovery Corp., 96 F.3d at 93; and then citing J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988)).

11

The court further concluded that the employee's "claim [bore] a significant relationship to the [e]mployment [a]greement" because of his employer's "failure to provide security to him and his employees, and because he seeks damages, at least in part, for wages and benefits set out in the [e]mployment [a]greement." Id. at *5.

In Saldanha v. Pediatrix Medical Group of South Carolina, P.A., the court determined that a former employee's claims under the ADA and the Employee Retirement Income Security Act ("ERISA") were subject to arbitration. No. 6:07-cv-4001, 2008 WL 4542872, at *3 (D.S.C. Oct. 3, 2008). The court found that clauses that mandated arbitration for "any controversy or claim arising out of or relating to this [employment agreement], or any alleged breach thereof, . . . clearly placed the parties on notice that statutory claims would be subject to arbitration." Id. at *1–2 (citing Cherry v. Wertheim Schroder & Co., Inc., 868 F. Supp. 830, 834 (D.S.C. 1994)). Accordingly, the court concluded that the former employee's ADA and ERISA claims "arose out of the [e]mployment [a]greement." Id. at *3.

In sum, courts are split on the issue of whether statutory discrimination claims fall within the scope of arbitration clauses with "arising out of or related to" language. On the one hand, the Fourth Circuit has characterized arbitration clauses that contain this phrase as "broad" and "capable of an expansive reach." Mey, 971 F.3d at 292 (quoting Am. Recovery Corp., 96 F.3d at 93). And, of course, the FAA codifies a "heavy presumption of arbitrability," which requires "that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." Id. (quoting Levin, 634 F.3d at 266). On the other hand, the Fourth Circuit found in Brown that statutory discrimination claims fell outside the scope of an arbitration clause using similar language because "none of the substantive

12

provisions in the agreement reaches beyond the agreement to cover disputes arising under [anti-discrimination] laws," and because the parties did not agree to arbitrate "all disputes arising out of the employment relationship," albeit in the context of a collective bargaining agreement. 127 F.3d at 341–42; see also Norman, 2017 WL 10844694, at *4.

The Fourth Circuit has instructed that the proper inquiry is "whether the arbitration agreement 'is susceptible of an interpretation that covers the asserted dispute.'" Mey, 971 F.3d at 292 (quoting Am. Recovery Corp., 96 F.3d at 92). Given that the Employment Agreement here contemplates disputes between the parties unrelated to the terms of the Agreement itself, see Employment Agreement, ECF No. 1-1, ¶ 11(d), the court is convinced that the Agreement is not susceptible of an interpretation that covers Tiedeman's statutory discrimination claims. Paragraph 11(d) states that "[t]he existence of any claim or cause of action of [Tiedeman] against [EyeOne], whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by [EyeOne] of this covenant." Employment Agreement, ECF No. 1-1, ¶ 11(d) (emphasis added). Though this language appears in the non-compete provision, the acknowledgement of unrelated claims nevertheless demonstrates that the parties contemplated the existence of disputes unrelated to the enumerated terms of the Agreement. See Norman, 2017 WL 10844694, at *5 ("[T]he [a]greement contains language that explicitly contemplates that [the former employee] has rights and remedies related to her employment outside of the parties' [a]greement.").

The parties did not see fit to include in the Agreement any terms related to discrimination. Even in the three-page termination provision that outlines the numerous avenues through which the employment relationship could end, the parties did not reference

discrimination as a potential justification to sever employment. See id. ¶ 10. Additionally, it is apparent from the language of ¶ 11(d) of the Agreement that the parties contemplated the existence of claims unrelated to the Agreement. In light of ¶ 11(d) and the exclusion of any language from the Agreement addressing employment discrimination, the court finds that Tiedeman's statutory discrimination claims do not bear a significant relationship to the terms of the Employment Agreement. As the court observed in Norman, the opposite conclusion would require the court to extend the scope of Tiedeman's Employment Agreement beyond its terms. 2017 WL 10844694, at *4 ("Had the parties intended to cover 'all aspects of the employment relationship' they could have included that language in the Agreement.").

## IV.

For the reasons stated above, EyeOne's Motion to Dismiss is **GRANTED**. An appropriate order shall issue.

Entered: May 8, 2024

Michael F. Urbanski
Chief United States District Judge

14